UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AGE GROUP LTD.,

    Plaintiff,

v.

REGAL WEST CORPORATION, d/b/a Regal Logistics,

    Defendant.

CASE NO. C07-1303BHS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 63). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL BACKGROUND**

On August 21, 2007, this action was transferred to this district from the United States District Court for the Southern District of New York. Dkt. 23. On September 18, 2007, the action was assigned to the undersigned. Dkt. 31.

On September 7, 2007, Plaintiff Age Group Ltd. filed an amended complaint against Defendant Regal West Corporation alleging that Defendant breached agreements

ORDER - 1

1  between Plaintiff and Defendant and also that Defendant negligently performed those

2  agreements. Dkt. 27 ("Complaint").

3        On October 14, 2008, Defendant filed a Motion for Summary Judgment. Dkt. 63.

4  On November 3, 2008, Plaintiff responded. Dkt. 69. On November 7, 2008, Defendant

5  replied and included a motion to strike material that was attached to Plaintiff's response.

6  Dkt. 72.

## II. FACTUAL BACKGROUND

Plaintiff "is engaged in business as a manufacturer, importer, wholesaler and distributor of wearing apparel." Complaint, ¶ 2. Plaintiff claims that:

> In or about November 30, 2004, [Defendant] by contact with [Plaintiff] in New York solicited [Plaintiff's] warehousing, domestic retail distribution, and related technology, transportation, logistic, shipping, management transportation and related 'value added' business.

*Id.* ¶ 7. Defendant claims that the contract between the parties "is two pages in length and sets forth the terms of the business dealings between the parties." Dkt. 63 at 3 (citing Dkt. 63-2, Declaration of Garry Neeves ("Neeves Decl."), Exh. A.) Plaintiff claims that the document that Defendant refers to is only a "summary quote" and is not the entire agreement between the parties. Dkt. 69 at 11-17.

The document entitled "Summary Quote" is dated November 24, 2004 and is signed by Mark Goldberg on behalf of Plaintiff. Neeves Decl., Exh. A. The document provides, in part, as follows:

> ACCEPTANCE – Sec 1
> (a) This contract and rate quotation including accessorial charges endorsed on or attached hereto must be accepted within 30 days from the proposal date by signature of depositor on the reverse side of this contract.
> ***
> NOTICE OF CLAIM AND FILING OF SUIT – Sec. 12
> (a) Claims by the depositor and all other persons must be presented in writing to the warehouseman within a reasonable time and in no event more than either 60 days after delivery of the goods by the warehouseman or 60 days after the depositor of record or the last known holder of a negotiable warehouse receipt is notified by the warehouseman that loss or injury to part or all of the goods has occurred, whichever is shorter.
> ***

LIABILITY FOR CONSEQUENTIAL DAMAGES – Sec 13
Warehouseman shall not be liable for any loss of profit or special, indirect, or consequential damages of any kind.

*Id.*

Plaintiff claims that it has sold merchandise to Target Corporation ("Target") since 2002. Dkt. 66, Declaration of Harlan M. Lazarus ("Lazarus Decl."), Exh. 36. Plaintiff claims that its business with Target exceeded $10,000,000 for the years 2002 through 2005. *Id*. It is undisputed that Defendant provided third-party logistic services to Plaintiff from the beginning of 2005 through the beginning of 2006. Neeves Decl. ¶ 4. Defendant's services include "truck[ing] its customer's merchandise from the Port of Tacoma to its Fife warehouse facility where the merchandise is unloaded, sorted, and stored." *Id*. ¶ 3. Defendant claims that when it "receives a customer's shipment order, it processes the order, locates, assembles, and packages the merchandise, and then loads the merchandise onto trucks owned and operated by third-parties for shipment to the customer's desired location." *Id*. Plaintiff claims that Defendant was unable to service its needs and, as a result of these deficiencies, Plaintiff lost substantial business with Target. *See* Complaint, ¶¶ 12-14. Defendant counters that it fulfilled the terms of the agreement between the parties. *See* Dkts. 63 and 72.

On February 8, 2008, Mr. Goldberg sent Defendant's representative, Tony Wilmoth, an email regarding "EBOL Charges." Lazarus Decl., Exh 39. Plaintiff claims that Mr. Goldberg was concerned about some charges that Defendant was assessing Plaintiff. *Id*. Mr. Wilmoth responded, in part, as follows:

> Mark – Please review the following responses to your issues.
> ***
> Routing charges- The routing is not unreasonable to maintain, review, enter, retrieve, schedule, and coordinate with the retailers traffic dept, along with record, post, store all scheduled appointment time, arrival time, and departure times. We capture, record, post, and store this information on behalf of our customer to protecting against future routing chargeback's. The routing also allows us visibility to achieve operational efficiencies to pull, stage and check outbound orders to turn the freight and benefits our customers by increasing turn time to minimize storage fees. In addition, if we allow our customers to route their own freight there would

> be a considerable clerical time/cost communications by our customers and within our operation.

*Id*. Plaintiff contends that this email shows that "'logistic' services were among the services [Defendant] agreed to provide to [Plaintiff]." Dkt. 69 at 13.

## III. DISCUSSION

### A. Defendant's Motion to Strike

Defendant moves to strike as inadmissible hearsay two statements that Plaintiff relies upon in opposition to summary judgment. Dkt. 72 at 8-10. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules . . . ." Fed. R. Evid. 802. Records of regularly conducted activities are admissible as an exception to the hearsay rule. Fed. R. Evid. 803(6) ("business records exception"). A document qualifies as a record of regularly conducted activity if it is "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge . . . ." *Id*.

#### 1. Linda Leneau's Statement

Defendant moves to strike a statement by Linda Leneau that was contained in an email. Dkt. 72 at 8. Ms. Leneau's statement is as follows:

> NOT A FINAL AUDIT - Dept 20 has discontinued busiess [sic] with this vendor due to missed shippments [sic] and over 700k in vendor compliance charges.

Lazarus Decl., Exh. 90 at 1.

Defendant contends that Ms. Leneau's statement is hearsay and does not qualify for the business record exception. Dkt. 72 at 8. The statement is hearsay because it is an out-of-court statement offered to prove that Target discontinued business with Plaintiff because of missed shipments. Defendant argues that the email may not be admitted under the business record exception because Ms. Leneau testified that she neither had personal knowledge of the missed shipments nor recorded the statement at or near the time of the

ORDER - 4

missed shipments. Dkt. 72 at 9-10. Ms. Leneau did state in her deposition that: (1) she did not know where she got the information that department 20 had discontinued business with Plaintiff due to missed shipments; (2) she did know what she was referring to when she stated that there was 700K in vendor compliance charges; and (3) did not know what she meant when she said that there were missed shipments. Dkt. 72-2, Declaration of Salvador A. Mungia, Exh D. Defendant asserts that "as is clear from the record, Ms. Leneau has no personal knowledge regarding missed shipments and there is nothing in the record demonstrating that the source of the information had personal knowledge of the alleged missed shipments." The Court agrees, as Plaintiff has failed to present evidence that Ms. Leneau either made or recorded her statement based on personal knowledge of the issues of discontinued business, missed shipments, or vendor compliance charges. Therefore, the Court grants Defendant's motion to strike the statement of Ms. Leneau as inadmissible hearsay.

### 2. Mr. Ebani's statement

The second statement is made by Harold Ebani and reads as follows:

> At the meeting I attended with Karen, I was told by Target's Grant Beggs and Terry Naccarado that Age's business with Target was over; I was told that the reason for the termination was the failure of Age to timely deliver product to Target in the prior year.

Dkt. 68, Declaration of Harold Ebani, ¶ 26. This statement is an out-of-court statement made by someone other than Mr. Ebani. Therefore, the Court grants Defendant's motion to strike this statement because it is inadmissible hearsay.

### B. Summary Judgment

As a threshold matter, Plaintiff fails to cite an applicable court rule or any case law in support of its positions in opposition to summary judgment. *See* Dkt. 69. Plaintiff, however, does argue that there exists "triable issues of fact" in this matter that must be tried by a jury. *Id*. at 15. Although there may be some disagreements as to the facts of this case, Plaintiff fails to show that the questions of fact upon which it relies are material to the applicable rules of law in this case.

### 1. Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

1  Finally, a party may not prevail in opposing a motion for summary judgment by
2  simply overwhelming the district court with a miscellany of unorganized documentation.
3  *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  In support of its
4  opposition to summary judgment, Plaintiff has submitted four declarations (Dkts. 64, 66-
5  68) and over twenty exhibits (Dkts. 66-2 to -27 (labeled Exhs. A to 90)).  Plaintiff has
6  failed to organize these documents in a reasonably intelligible manner and most of the
7  documents and statements contained in the declarations lack any authentication
8  whatsoever.  Therefore, even if the organization prerequisite was met, the material would
9  most likely not be admissible at trial based on a lack of foundation.  This lack of
10 admissible evidence is fatal to Plaintiff's opposition.

### 2. The Contract

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996).  As the Washington Supreme Court has noted, courts asked to enforce a contract may be called upon to either construct or interpret a contract's terms.  *Berg v. Hudesman*, 115 Wn.2d 657, 663 (1990). Contract construction requires the court to determine the legal consequences that flow from a contract's terms.  *Id*. at 663. Contract construction is a purely legal question, and is therefore appropriate for resolution at the summary judgment stage.

Defendant claims that the entire contract between the parties consists of the two-page document entitled "Summary Quote."  Dkt. 63 at 6-7.  Plaintiff argues, without citation to any rule of law, that Defendant "cannot rely on the pre-printed terms set forth on the . . . 'Summary Quote' because (A) it reflects only a preliminary agreement on pricing; (B) it has no 'start date' or 'end date'; and (C) the terms on the ['Summary Quote'] pertain only to [Defendant's] services as 'Warehouseman.'"  Dkt. 69 at 11.  Plaintiff contends that the actual contract between the parties included terms from other

materials such as a document regarding routing charges (Lazarus Decl., Exh. B) and portions of Defendant's website (*Id*., Exh. 11). Dkt. 69 at 13-14.

It appears, however, that the only signed agreement between the parties that is on the record is the document entitled "Summary Quote." Section 1 of that document, entitled "Acceptance," provides that "This contract and rate quote . . . must be accepted within 30 days from the proposed date by signature of depositor . . . ." Dkt. 63-2 at 5. The contract and quote were proposed on November 24, 2004. *Id*. at 4. On November 30, 2004, Mark Goldberg signed the contract and quote on behalf of "Customer" Age Group Ltd. *Id*. Plaintiff's argument regarding whether this document is a preliminary agreement is unsupported by the plain language of the document. Plaintiff's argument regarding whether this document is a valid agreement because it has no "start date" or "end date" entry is without legal authority and is unsupported by the admissible evidence on the record. Therefore, the Court finds that this constitutes the only contract between the parties and its terms control the business relationship between the parties.

Plaintiff's final argument regards the limited scope of the "Summary Quote" contract. Plaintiff claims that the "Summary Quote" document covers the agreement between the parties as to Defendant's actions as a "warehouseman" and does not cover the agreement between the parties with regard to Defendant providing logistic services for Plaintiff. Plaintiff contends that Mr. Wilmoth's email to Mr. Goldberg (Lazarus Decl., Exh 39) shows that "'logistic' services were among the services [Defendant] agreed to provide to [Plaintiff]." Dkt. 69 at 13. Plaintiff's conclusory allegation is not supported by either the language of the email or the record before the Court. In fact, Plaintiff has submitted no admissible evidence that Defendant agreed to "logistic services" beyond transporting Plaintiff's goods from the Port of Tacoma to Defendant's Fife warehouse. Moreover, Plaintiff cites no authority for the proposition that rates charged under a valid contract create extra provisions under that contract. Therefore, the contract between the

1 parties was memorialized in the document that was signed by both parties and is entitled
2 "Summary Quote."

### 3. Performance and Damages

Defendant alleges that Plaintiff negligently breached and/or negligently performed the contract between the parties. Complaint, ¶¶ 23, 26. Assuming, without deciding, that Defendant either breached or negligently performed the contract in question, the parties agreed to certain limitations on damages. *See supra*. First, the parties agreed that Plaintiff would file a claim with Defendant within 60 days of delivery of goods by Defendant. Summary Quote § 12. Second, the parties agreed that Defendant would not be liable for Plaintiff's "loss of profit . . . of any kind." Summary Quote § 13. Defendant argues that summary judgment is appropriate based on either of these provisions.

Defendant claims that "[i]t is undisputed that [Plaintiff] failed to provide a 60 day written notice of its claim to [Defendant]." Defendant's Vice President, Gary Neeves, stated in his declaration that "Age Group did not make a claim in writing within 60 days after the delivery of goods." Neeves Decl. ¶ 5. Plaintiff has presented no evidence to contradict this assertion. Therefore, Defendant's motion for summary judgment is granted because Defendant has shown that it is entitled to judgment as a matter of law and Plaintiff has failed to present evidence that creates a material question of fact regarding the claim filing provision of the contract.

Furthermore, it seems that Plaintiff alleges damages that resulted only from the failed business relationship with a third-party buyer:

> But for the acts and omissions of [Defendant] in causing [Plaintiff's] merchandise to be shipped past the deadlines established by Target Corporation, [Plaintiff's] profitable and substantial Target Corporation business would have continued.

Dkt. 69 at 2. Defendant argues that Plaintiff specifically agreed not to hold Defendant liable for these types of damages. Dkt. 63 at 9-10. Plaintiff has presented no evidence to contradict either the limitation on consequential damages provision of the contract or Defendant's assertion that it bars Plaintiff's damages in this action. Therefore,

Defendant's motion for summary judgment is granted because Defendant has show that it is entitled to judgment as a matter of law and Plaintiff has failed to present evidence that creates a material issue of fact regarding the limitation on consequential damages provision of the contract.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 63) is **GRANTED**. Plaintiff's complaint (Dkt. 27) is **DISMISSED with prejudice**.

DATED this 14th day of November, 2008.

BENJAMIN H. SETTLE
United States District Judge